UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

MARTY L. BUCHANAN )
)
V. ) NO. 2:09-CV-281
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation, following the administrative denial by the Commissioner of the plaintiff's application for supplemental security income following a hearing before an Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 10 and 14].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 34 years of age when his application for benefits was denied. He has a 10th grade or "limited" education. He has worked in the past as a book stacker (general laborer) which was light and unskilled; as a construction worker which was heavy and semi-skilled; and as a roofer's helper which was medium and unskilled.

The ALJ found that the plaintiff had severe impairments of bacterial meningitis with a history of intravenous drug use, Hepatitis B and C, decreased visual acuity, and degenerative disc disease. He found that plaintiff's alleged depression and anxiety were not severe impairments, and that they caused no more than "mild" limitations.[1]

The medical evidence before the ALJ is summarized by the plaintiff as follows:

> Plaintiff has been seen at Sycamore Shoals Hospital. On April 5, 2006, treatment was rendered for the diagnosis of recurrent low back pain (Tr. 208-216). Admission was required from August 10, 2006 through August 12, 2006, after Plaintiff presented with severe right upper quadrant pain and nausea and was found to have gallstones and acute cholecystitis, for which cholecystectomy was performed (Tr. 193-207). On October 3, 2006 and October 14, 2006, Plaintiff presented with complaints of headache, diagnosed as migraine (Tr. 172-192). Plaintiff was admitted from October 15, 2006 through October 25, 2006, after he was found lying at home, altered, totally confused, disoriented, ranting and raving, and thrashing about. Plaintiff was found to have bacterial meningitis, for which he was admitted to ICU in critical condition. The discharge diagnoses were bacterial meningitis with neisseria, intravenous drug abuse, and headache (Tr. 156-171). Plaintiff returned for follow-up Rochephin injections on October 26, 2006, October 27, 2006, and October 28, 2006 (Tr. 138-155).
> Plaintiff has received treatment at Johnson City Medical Center. On November 24, 2006, treatment was rendered for gastroenteritis with dehydration (Tr. 217-230, 251-

---

[1] Plaintiff did not argue that ALJ's finding of no severe mental impairment was erroneous, and thus this argument is waived.

2

260). Plaintiff was admitted from January 4, 2007 through January 22, 2007, upon transfer from Sycamore Shoals Hospital because of continued headache and back pain following an admission for recurrent acute pseudomonas meningitis. Consultation by Dr. Welch was obtained due to elevated liver function tests and hepatitis B core IgM was found to be positive. The discharge diagnoses were meningitis with pseudomonas, hepatitis B virus carrier, intravenous drug abuse, alcohol abuse, and tobacco abuse (Tr. 234-250).

Plaintiff underwent consultative exam by Dr. Karl W. Konrad on February 9, 2007. Presenting complaints included upper back and neck pain associated with severe headaches and tingling all over and history of spinal meningitis. Exam was remarkable for decreased vision, limited range of motion of the lumbar spine, and abnormality of mental status. The diagnoses were decreased uncorrected Snellen visual acuity, limited range of motion of lumbar spine with normal x-rays, and history of IV drug abuse (Tr. 261-264).[2]

On February 15, 2007, a reviewing state agency physician opined Plaintiff can lift/carry a maximum of 50 pounds occasionally, 25 pounds frequently; can stand/walk for a total of about six hours in an eight-hour workday; can sit for a total of about six hours in an eight-hour workday; and is visually limited in far acuity (Tr. 265-272).

On February 22, 2007, a reviewing state agency psychologist opined Plaintiff's mental impairments(s) are not severe and result in him being mildly limited by restriction of activities of daily living, by difficulties in maintaining social functioning, and by difficulties in maintaining concentration, persistence, or pace (Tr. 273-286).

Plaintiff has been seen at North Side Hospital. On April 6, 2006, treatment was rendered for back pain (Tr. 296-299). Plaintiff returned on August 22, 2007, with complaints of back pain, vomiting, and convulsions. Lumbar puncture was performed, due to vomiting, convulsions, unresponsive, headaches. The fluid was noted to be grossly abnormal. The final diagnosis is not included in the record (Tr. 291-295). On September 7, 2007, treatment was rendered for complaints of headache, back pain, and vomiting (Tr. 288-290).

Additional records were received from Sycamore Shoals Hospital. Plaintiff was admitted from December 28, 2006 through January 4, 2007, after he presented with headache, neck pain, and pain all over, associated with vomiting and chills. Lumbar puncture was consistent with clinical suspicion for meningitis. Upon discharge, Plaintiff was transferred to Johnson City Medical Center for pain management and follow-up of labs (Tr. 300-341, 376-380). Plaintiff received Emergency Room treatment on April 28, 2007 and September 9, 2007, due to viral gastroenteritis and chronic back pain (Tr. 356-375).

Plaintiff has received treatment by Dr. Gamal Boutros. Nerve conduction studies of the upper and lower extremities were obtained on April 23, 2007, for evaluation of neck pain radiating into both shoulders, numbness and tingling in both arms, low back pain, and numbness and tingling into both buttocks and thighs. The studies were normal (Tr. 345-351). Plaintiff returned on September 18, 2007, for follow-up regarding

---

[2]Other than decreased uncorrected visual acuity, Dr. Konrad found "no impairment related physical limitations."

3

headache, neck pain, and back pain. History was positive for weight loss, inability to sleep, continuously moving around in the bed, sacral pain, and headache. On exam, Plaintiff's mood and affect was sad with slow response; his attention span and concentration was fair; his ability to name objects, repeat phrases, and speak spontaneously was below average; he had decreased left patellar reflex, right patellar reflex, left Achilles reflex, and right Achilles reflex; Babinski reflex was absent; and tenderness was noted on palpation of the sacroiliac trigger points. The assessment was chronic pain syndrome in a poly substance abuse, rule out discitis, osteomyelitis; multiple adenopathy; restless leg; and hepatitis B and C (Tr. 343-344). On October 2, 2007, bone scan noted increased activity along the anterior aspect of the 6th through 8th ribs on the right, consistent with post traumatic change. Bone mineral density testing results noted Plaintiff to be osteoporotic, with significant increase in fracture risk (Tr. 353-355, 400-403). Plaintiff followed-up on October 9, 2007, at which time he complained of back pain, worsened by bending, climbing stairs, lifting, standing, and walking. Review of systems was positive for severe osteoporosis, chronic low back pain, hepatitis B, blurry vision, and dizziness. The assessment was chronic low back pain,osteoporosis, and cervical adenopathy (Tr. 398-399).

  Plaintiff received treatment at First Medical Group, by Dr. Fenner, from August 30, 2007 through January 7, 2008. Conditions and complaints addressed include liver disease, drug abuse, hepatitis B, chronic low back pain, and chronic headaches (Tr. 406-463).

  Dr. Fenner's notes included hospital records reflecting admission to Johnson City Medical Center from August 22, 2007 through August 29, 2007, upon transfer from North Side Hospital for leukocytosis with a history of recurrent meningitis. MRI of the lumbar spine revealed hyperintense signal in the dorsal paraspinal soft tissues and adjacent to the spinous processes of L3 and L3, possibly due to prior procedure; minimal facet degenerative change and ligamentum flavum hypertrophic change at L1-2; a diffuse disc bulge and mild facet and ligamentum flavum hypertrophic change at L2-3; a diffuse disc bulge and mild to moderate facet and ligamentum flavum hypertrophic change at L3-4; and a mild diffuse disc bulge and mild facet and ligamentum flavum degenerative change at L4-5. MRI of the brain showed nonspecific white matter hyperintensity in the left frontal region (Tr. 418-440).

  Also included with Dr. Fenner's records are notes from Plaintiff's hospitalization in September 2000, at which time he was admitted with two stab wounds in the left axilla, two stab wounds in the right back, and one stab wound in the right medial arm. The final diagnosis was status post stab wounds, right brachial artery repair (Tr. 462-463).

[Doc. 11, pgs. 2-5].

On January 17, 2008, the ALJ conducted an administrative hearing on the plaintiff's claim. Cathy Sanders, a vocational expert, appeared and testified at the hearing. Ms. Sanders was asked by the ALJ to describe the plaintiff's past relevant work. She stated that

"the general laborer (book stacker) in 2005 was light and unskilled." The construction job was described by her as "heavy and semi-skilled." [Tr. 39]. The roofing job was described by her as medium and semi-skilled. [Tr. 40].

The ALJ then asked Ms. Sanders to assume "the claimant to be a 34-year old individual who has a 10th grade education and the work background that you have described. If you'll assume, first of all, that the claimant is restricted to the demands exertionally of light work activity...(and) if you'll further assume...the claimant has some visual problems...that would preclude work that required good far acuity...(and that) the claimant could do no work that would require frequent interaction with the public in food preparation or food service due to the diagnosis of Hepatitis...would there be jobs that the claimant could perform that exist in the regional and national economy?" Ms. Sanders identified the jobs of stockers, cleaners, grounds maintenance personnel, non-construction laborers, sorters, hand packagers, assemblers and machine operators. She stated there were approximately 16,000 such jobs in the region and 650,000 in the nation. [Tr. 40-41]. Plaintiff's counsel asked only one question of the VE regarding whether a number of absences per month would affect the existence of such jobs.

In his hearing decision, the ALJ found that the plaintiff had the severe physical impairments listed hereinabove [Tr. 17] and did not have a severe mental impairment. He found that "the claimant has the residual functional capacity for light work that does not require good far acuity and that does not include working with the public, in food preparation or in food service." [Tr. 20]. The ALJ found that the plaintiff was capable of performing his past relevant work as a book stacker. Alternatively, the ALJ found that the plaintiff could

perform the jobs identified by Ms. Sanders at the hearing. Accordingly, he was found to be "not disabled." [Tr. 21].

Subsequent to the issuance of the ALJ's decision, the plaintiff submitted certain evidence to the Appeals Council. That evidence is summarized in the plaintiff's brief as follows:

> Additional records were received from Dr. Fenner and submitted to the Appeals Council. Some of the records duplicates and will not be readdressed here. A note dated January 3, 2008, which was not included with those previously sent, reflects treatment for jaundice (Tr. 486). Plaintiff continued treatment by Dr. Fenner from January 17, 2008 through April 17, 2009, due to hepatitis B, hepatitis C, and advanced liver disease (Tr. 482-484, 515, 544-554). On January 11, 2008, liver profile and hepatitis C profile noted significant elevations of total bilirubin, direct bilirubin, indirect bilirubin, alkaline phosphatase, AST/SGOT, ALT/SGPT, HCV RNA quant, and HCA RNA log (Tr. 515). On January 14, 2008, ultrasound showed mild increased echogenicity of the liver (Tr. 488). On January 17, 2008, Dr. Fenner opined Plaintiff's hepatitis B and C with significant elevated liver tests is too far advanced for safe treatment, thus referral was made for consideration of liver transplant (Tr. 483).
> On January 18, 2008, Dr. Fenner reported that Plaintiff has been diagnosed with hepatitis B and hepatitis C. Dr. Fenner opined Plaintiff's disease has progressed beyond the point of effective treatment, thus he has recommended referral for evaluation for a possible liver transplant. Dr. Fenner further opined Plaintiff is totally and permanently disabled from his liver disease (Tr. 476). On March 2, 2009, Dr. Fenner obtained consultation by Dr. Porayko who opined Plaintiff has liver disease of unclear stage; his liver disease may have been aggravated by partial alpha 1-antitrypsin deficiency; and he now shows evidence of active viral replication and is likely to progress to the need for liver transplantation in the future if the viral infection cannot be controlled (Tr. 551-553). On April 17, 2009, liver biopsy was performed and yielded the diagnoses of chronic active hepatitis C, mildly active (grade 2 of 4); extensive bridging fibrosis with probable cirrhosis (stage 3-4 of 4); and mild steatosis (Tr. 546-548).

[Doc. 11, pgs. 6 and 7].

Plaintiff first asserts that the ALJ erred in finding that the plaintiff could return to his "past relevant work" as a book stacker because that job did not constitute "past relevant work" for this plaintiff. As plaintiff states "[t]o be considered relevant, past work mut have been performed within the last 15 years, must have lasted long enough for the person to learn

to do it, and must have constituted 'substantial gainful employment.'" [Doc. 11, pg 8] *citing, Reader v. Apfel,* 214 F.3d 984, 989 (8th Cir. 2000). Plaintiff points out that, prior to the appeal from the agency to the ALJ, the Social Security Administration determined that the plaintiff had "not performed substantial gainful work in the past..." [Tr. 54]. Also, a vocational analyst with the Tennessee Department of Rehabilitation Services, Mr. Matthew R. Rutherford, determined that the plaintiff had "no past relevant work." [Tr. 118].

Plaintiff also argues that the ALJ did not properly analyze and discuss his rationale regarding his decision that the plaintiff could return to that job. He asserts "[t]he ALJ offered no finding of fact as to the exertional requirements of Plaintiff's work as a book stacker, when he performed it, how long he performed it, or whether it was substantial gainful activity." [Doc. 11, pgs. 8-9].

In fact, the ALJ did have evidence of the exertional requirements of that job from the vocational expert. Since the job of a book stacker would not require "far visual acuity" or involve working with the public, food preparation or food service, if he could do light work he could return to that job. However, there is a question, not adequately resolved by the record, as to whether this, or other jobs, constituted "substantial gainful employment" or met the other requirements of past relevant work. A strong argument could be made that since the plaintiff's highly respected counsel made no assertion before filing his brief in this lawsuit, the ALJ had every right to believe that the book stacker (general laborer) job was substantial gainful activity. Counsel examined plaintiff thoroughly regarding that job at the hearing [Tr. 28-30]. Plaintiff testified he held it for 8 months, what the requirements were, and that he quit because he was having headaches and back problems.

7

Irrespective of whether the ALJ erred in finding that there was a past relevant job to which the plaintiff could return, he offered an alternative "Step five" finding that there was a substantial number of jobs which the plaintiff could perform. Plaintiff asserts that the ALJ's finding is fatally flawed because the residual functional capacity set forth in the hearing decision is not the one posed to the VE at the administrative hearing. The RFC found in the hearing decision found the plaintiff capable of light work that did not demand visual acuity at distances and "does not include working with the public, in food preparation or in food service." [Tr. 20]. The jobs identified by the VE which the ALJ found existed in the local and regional economies were based upon a requirement that "the claimant could do no work that would require frequent interaction with the public in food preparation or food service due to the diagnosis of hepatitis."

Plaintiff asserts that the RFC set out in the hearing decision is more restrictive than the one posed in the question to the vocational expert. He insists that the RFC forbids (1) working with public **and** (2) working in food preparation or in food service.

The RFC statement in the hearing decision is not an epitome of clarity or grammatical precision. However, the Court feels like the ALJ was limiting the plaintiff from being around the public in the sense that he could not prepare food or work in the food service industry. This would comport with the question posed to the vocational expert, and her enumeration of jobs the plaintiff could perform is thus substantial evidence to support the ALJ's finding in this regard.

Finally, the plaintiff asks that the case be remanded for further administrative review due to medical evidence submitted to the Appeals Council. To support a "Sentence Six"

remand under 42 U.S.C. § 405(g), the evidence must be new, material, and there must be good cause for not presenting it in the prior proceeding. The ALJ's decision was rendered on March 6, 2008.

It is true, as the Commissioner states, that the medical records sent to the Appeals Council were either generated *before* the ALJ's decision or over a year *after* his decision. Most of the evidence sent to the Appeals Council by plaintiff's counsel predating the ALJ's decision was not, in the opinion of this Court, "material" and would not have likely caused the ALJ to reach a different decision. However, one piece of evidence, Dr. Fenner's treatment note from January 17, 2008 to the effect that the plaintiff's liver disease was "too far advanced for safe treatment..." and that he had requested "referral to Vanderbilt to consider liver transplant..." does appear to be material. [Tr. 483]. The issues are, was the evidence "new" and was there good cause for not presenting it to the ALJ.

That treatment note, along with several other records from Dr. Fenner, were sent to the Appeals Council by plaintiff's counsel with a cover letter dated March 20, 2008, two weeks after the ALJ rendered his decision. There is no explanation that the Court could find as to when plaintiff's counsel received the materials from Dr. Fenner or why he did not get them into the record before the ALJ rendered his decision.

Also, plaintiff and his counsel knew that he was going to be examined and evaluated by Dr. Fenner on January 17, 2008, because they discussed that fact with the ALJ at the administrative hearing, which was also held on January 17, 2008. [Tr. 35]. The ALJ agreed to keep the record open for a time in order to give plaintiff's counsel an opportunity to provide the records generated by Dr. Fenner's examination. [Tr. 42]. There is no indication

9

in the record that plaintiff's counsel contacted the ALJ requesting additional time to supply this evidence due to any inability to get the records from Dr. Fenner. No explanation was offered to the Appeals Council or in the present Motion or memorandum. It is plaintiff's duty to show good cause for not submitting evidence to the ALJ which existed prior to his decision so he would have been obligated to consider it.

Most of the other records provided to the Appeal's Council were the result of tests and evaluations performed a year or more after the ALJ rendered his decision. These are not "material" because of their extreme remoteness in time from the period encompassed by the ALJ's decision. One record which plaintiff's counsel sent to the Appeals Council on March 11, 2009, was a "to whom it may concern" letter from Dr. Fenner dated January 18, **2008**, which opined that the plaintiff was "totally and permanently disabled from his liver disease." [Tr. 474-76]. Again, no explanation is offered as to why this letter was not presented to the ALJ, or why it was not presented to the Appeals Council for over a year after the ALJ's decision was handed down. Plaintiff's proper remedy at this juncture is to file a new application.

Plaintiff has not shown good cause for failing to present Dr. Fenner's records and notes to the ALJ. Thus, the requirements for a Sentence Six remand have not been met. There is substantial evidence to support the ALJ's finding regarding the plaintiff's residual functional capacity. There is also, at the very least, substantial evidence to support the ALJ's finding that a significant number of jobs exist which a person with plaintiff's RFC can perform. It is therefore respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 10] be DENIED and that the Commissioner's Motion for Summary

Judgment [Doc. 14] be GRANTED.[3]

                                        Respectfully submitted:

                                                        s/ Dennis H. Inman
                                                     United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).